IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

INTERNATIONAL CHEMICAL          )
WORKERS COUNCIL OF THE          )
UNITED FOOD AND COMMERCIAL      )
WORKERS, LOCAL 94-C,            )
                                )        Civil Action No. 5:20-cv-38
        Plaintiff,              )
                                )        By: Elizabeth K. Dillon
v.                              )            United States District Judge
                                )
MERCK SHARP & DOHME CORP.,      )
                                )
        Defendant.              )

**MEMORANDUM OPINION**

This dispute arises under Section 301(a) of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185(a).  (Compl. 1, Dkt. No. 1.)  Plaintiff International Chemical

Workers Council of the United Food and Commercial Workers, Local 94-C, seeks to enforce an

arbitration award against defendant Merck Sharp & Dohme Corporation.  At issue is whether

certain overtime compensation is included in the arbitration award.  Pending before the court is

Merck's motion to dismiss.  (Mot. to Dismiss, Dkt. No. 26.)  For the reasons stated below, the

court will deny the motion to dismiss.

I.  BACKGROUND

**A.  Factual Background**

Plaintiff International Chemical Workers Council of the United Food and Commercial

Workers, Local 94-C ("Union") is a labor union that represents production, service, and

maintenance workers employed by defendant Merck Sharp & Dohme Corporation ("Merck"), a

pharmaceutical company.  (Compl. 2, Dkt. No. 1.)  Between March 3, 2014 and April 30, 2018,

Merck and the Union were parties to a collective bargaining agreement (the "Agreement").  (*Id.* at 3.)  The Agreement provided a process for determining which employees should be promoted, as well as a process for resolving grievances.  (*Id.*)

On July 18, 2016, Merck posted notice of an opening for a maintenance mechanic position in the Primaxin Department.  (*Id.*)  James Knight, who was working as a facilities operator in the Utilities Department, bid for the position.  (*Id.*)  On September 14, 2016, Merck awarded the position to another employee.  (*Id.*)  Knight filed a grievance claiming that the failure to award him the position violated the Agreement.  (*Id.*)

Pursuant to the grievance procedure, the Union submitted the dispute to binding arbitration.  (*Id.*)  On January 11, 2019, an arbitration hearing was held before Arbitrator Jared Kasher in which both parties had the opportunity to present evidence.  (*Id.* at 4.)  At the beginning of the arbitration proceeding, the Union requested that Knight "be given back pay for the differential with consideration to overtime."  (Dkt. 1-2 at 17.)  The Union asked Arbitrator Kasher to "keep the issue of damages open and [] hold jurisdiction [] to see if the company and the union can come to some agreement on what [] damages would be," if he ruled in favor of the Union.  (Dkt. 1-2 at 17.)  During the remainder of the arbitration proceeding, neither the Union nor Merck mentioned the composition of damages.

On June 28, 2019, the arbitrator issued an award granting the maintenance mechanic position to Knight and providing that Knight be made whole.  (Compl. 3)  The award stated:

> In accordance with the above findings the grievance is sustained and the Grievant shall be awarded the position as of September 14, 2016, or the date upon which the successful applicants began work as Maintenance Mechanics in the Primaxin Department.  The Grievant shall be made whole as of that date.  (Dkt. No. 1-3 at 18.)

The arbitrator did not retain jurisdiction after resolution of the dispute.  (Compl. 5.)

2

After the arbitrator issued the award, Merck placed Knight in the maintenance mechanic role and paid him the difference between his wage rate as a facilities operator and the wage rate he would have received as a maintenance mechanic for all the hours he worked or received compensation between September 14, 2016, and his first day as a maintenance mechanic.  (*Id.* at 4.)  However, Merck did not pay Knight for the loss of additional overtime hours he would have worked had he been working in the maintenance mechanic position since September 14, 2016. (*Id.*)

The Union sought to "obtain a determination from the Arbitrator as to whether the act of making whole the Grievant should include a measure of additional overtime hours he would have worked had he been working in the position of Maintenance Mechanic in the Primaxin Department since September 14, 2016, but the Company has declined to seek such a determination."  (*Id.* at 5.)

**B.  Procedural Background**

On July 25, 2020, the Union filed a complaint against Merck alleging breach of contract. (*Id.* at 5.)  The Union claims that Merck's failure to pay Knight for the overtime he would have earned had he initially been hired to the maintenance mechanic position is a failure to comply with the arbitration award and, thus, a breach of the Agreement.  (*Id.*)  The Union seeks an order directing Merck to comply with the arbitration award, or, in the alternative, remand of the dispute to the arbitrator to resolve the overtime issue.  (*Id.* at 5–6.)

Merck filed a motion to dismiss for failure to state a claim upon which relief may be granted.  (Mot. to Dismiss, Dkt. No. 26.)   Merck argues that: (1) the Union failed to present or preserve the issue of overtime pay during the arbitration, thereby waiving the argument that the arbitration award included lost overtime pay; (2) Merck has already complied with the arbitration

3

award; (3) the court is precluded from remanding the case to the arbitrator; (4) the lost overtime award would be punitive, which is not permitted under the bargaining Agreement; and (5) the Union is not entitled to attorney's fees or costs.  (Def.'s Brief, Dkt. No. 27.)

In response, the Union argues that it did not waive the issue of lost overtime, that Merck has not complied with the arbitration award, and that the case may be remanded to the arbitrator. (Plf.'s Brief at 3–10, Dkt. No. 31.)  In addition, the Union argues that an award of lost overtime would not be punitive, and an award of attorney's fees is appropriate where a party unjustifiably refuses to comply with an arbitration award.  (*Id.* at 10–13.)

The parties argued the motion on March 5, 2021.

## II.  DISCUSSION

### A.  Jurisdiction

The court has jurisdiction over this action pursuant to Section 301(a) of the LMRA. "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).  "For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization  (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." 29 U.S.C. § 185(c).

Here, the Union's offices are in Elkton, Virginia, and the Union is engaged in representing employee members who work at Merck's plant in Elkton, Virginia.  (Compl. 2.)

4

Moreover, this suit deals with an alleged violation of the Agreement between employer Merck and the Union.  As such, the court has jurisdiction over this matter.

## B.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 550.  A court will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  A court need not accept "legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "In adjudicating a motion to dismiss, 'a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.'"  *Rothy's, Inc. v. JKM Techs., LLC*, 360 F. Supp. 3d 373, 378 (W.D. Va. 2018) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).

## C.  Waiver of the Overtime Argument

Merck argues that the Union waived its claim that the arbitration award includes certain overtime by failing to present evidence on this issue at the hearing, failing to raise the issue in its post-hearing brief, and failing to request that the arbitrator retain jurisdiction over the case.

(Def.'s Br. 7.)  The Union, on the other hand, claims that it did not waive the overtime argument because it raised the issue at the beginning of the arbitration hearing.  (Pl.'s Br. 3-5.)

Merck cites multiple cases for the principle that a party's failure to raise an issue during arbitration operates as a waiver of that issue.  (Def.'s Br. 9 (citing *Mine Workers Local 7555 v. Island Creek Coal Co.*, 179 F.3d 133, 140 (4th Cir. 1999) (union waived argument that termination of protesting employees violated the protesters' First Amendment rights where union failed to raise the argument before the arbitrator); *Elwell v. United States Postal Serv.*, 2007 BL 239191, at *2 (D.S.C. Apr. 6, 2007) (where the employer failed to raise the issue of mitigation of damages in either of two arbitrations, it waived any right it had to pursue this mitigation defense on a motion to vacate); *Chemical Workers Local 683C v. Columbian Chems. Co.*, 331 F.3d 491, 498 (5th Cir. 2003) (finding that the employer's failure to raise the issue of offsets to back pay waived the issue on federal court review); *Auto. Mechs. Local 701 v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991) (where employer did not raise the issue of interim earnings to the arbitrator, it "may not now contend that interim earnings should have been deducted from the award")).

Moreover, "remand [to an arbitrator] is not appropriate . . . where it would force a decision on an issue not previously submitted to the arbitrator."  *Oil, Chemical & Atomic Workers Int'l Union, Local 4–367 v. Rohm & Haas, Texas Inc.*, 677 F.2d 492, 495 (5th Cir. 1982).  The reasoning is that "a party to arbitration cannot voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator."  *Rock-Tenn Co. v. Paperworkers*, 184 F.3d 330, 334 (4th Cir. 1999) (citing *United Food & Comm. Workers v. Marval Poultry Co., Inc.*, 876 F.2d 346, 352 (4th Cir. 1989)).

Here, the Union raised the overtime issue during the arbitration.  The Union attorney explicitly asked, at the beginning of the arbitration hearing, that Mr. Knight "be given back pay for the differential with consideration to overtime."  (Pl.'s Br. 3; Dkt. 1-2 at 17.)  Moreover, the Union attorney requested that the arbitrator "keep the issue of damages open and [] hold jurisdiction [] to see if the company and the union can come to some agreement on what those damages would be if [the arbitrator's] award would be that [Knight] get the position with back pay."  (Dkt. 1-2 at 17.)  Merck does not cite any case law that suggests a party must raise an issue during the evidentiary phase of a proceeding or at the end of an arbitration proceeding in order to avoid waiver.  Rather, Merck cites cases in which parties waived an issue by failing to raise the issue at any time during the arbitration.  That is not the situation we have here.  Instead, the arbitration transcript shows that the Union raised the overtime issue during the initial phase of the arbitration proceeding; and therefore, the Union has not waived the issue.

## D.  Doctrine of *Functus Officio*

The Union requests that the court either order Merck to pay Knight for overtime he would have earned in the maintenance mechanic role or remand the case to the arbitrator for clarification on the overtime issue.  (Compl. 5–6.)  Merck argues that the court is barred from remanding the case to the arbitrator by the doctrine of *functus officio*.

Under the doctrine of *functus officio*, an arbitrator loses the authority to act after making a final determination on a matter.  *AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd.*, 404 F. App'x 793, 799 (4th Cir. 2010) (citing *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.*, 931 F.2d 191, 195 (2d Cir. 1991); *Colonial Penn Ins. Co. v. Omaha Indemnity Co.*, 943 F.2d 327, 331 (3d Cir. 1991)).  This principle prevents an arbitrator from reexamining

the merits of a final award.  *Id.* (citing *Trade & Transport, Inc.*, 931 F.2d at 195; *Colonial Penn Ins. Co.*, 943 F.2d at 331–32).

"Although the doctrine of *functus officio* was strictly enforced at common law (often to thwart the effectiveness of arbitration), in the wake of the Supreme Court's pro-arbitration decision in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957), the doctrine has not been as strictly enforced in labor dispute cases arising under Section 301 of the LMRA.  *Brown v. Witco Corp.*, 340 F.3d 209, 218–19 (5th Cir. 2003) (citing *Glass, Molders, Pottery, Plastics & Allied Workers International Union v. Excelsior Foundry*, 56 F.3d 844, 847–48 (7th Cir. 1995); *Colonial Penn Insurance Co. v. Omaha Indemnity Co.*, 943 F.2d 327 (3d Cir. 1991)). "Furthermore, there are a number of well-recognized exceptions to the *functus officio* rule."  *Id.* at 219.  "An arbitrator can (1) correct a mistake which is apparent on the face of his award; (2) decide an issue which has been submitted but which has not been completely adjudicated by the original award; or (3) clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation."  *Id.* (citing *Excelsior Foundry*, 56 F.3d at 848; *Colonial Penn Insurance Co.*, 943 F.2d at 332); *see Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24*, 357 F.3d 546, 553 (6th Cir. 2004) ("if an arbitration award is ambiguous and in need of clarification, courts are made to remand back to the arbitrator to clarify its meaning and intent"); *see also Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB*, 261 F. App'x 631, 633 (4th Cir. 2008) (stating that the court may remand an arbitration award if it is ambiguous).

"A remand for clarification is proper only when the award itself can be interpreted in a variety of ways."  *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 780 n.4 (11th Cir. 1993).  Courts have found "make whole" arbitration awards ambiguous when they can be

8

interpreted in multiple ways.  For example, in *Coca-Cola Bottling Co., Consol. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers, Local Union No. 991*, 506 F. Supp. 2d 1052, 1057 (S.D. Ala. 2007), "an arbitrator entered an award with a make-whole remedial component, and the parties [were] unable to agree on the computation of that make-whole remedy."  The *Coca-Cola Bottling Co.* court remanded the award to the arbitrator for clarification, citing "a sizeable body of case law in which courts have seen fit to remand actions to the original arbitrator for clarification, amplification or interpretation of the existing award." *Id.* (collecting cases).  Similarly, in *United Food & Commercial Workers Local 100A, AFL-CIO & CLC v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1345 (7th Cir. 1991), the court remanded an arbitrator's make whole award because, "the award [wa]s ambiguous and the record fail[ed] to resolve the ambiguity."

Like the instant case, *United Steelworkers of Am., Local 4839 v. New Idea Farm Equip. Corp.*, 917 F.2d 964, 968–69 (6th Cir. 1990), dealt with confusion over whether a make whole arbitration award included unearned overtime.  In *United Steelworkers of Am., Local 4839*, an arbitrator issued an award that directed an employee to "be made whole for straight time earnings and benefits that would have been payable thereafter."  917 F.2d at 968–69.  The court found "uncertainty and ambiguity" in this award because it was unclear whether the "make whole" award included overtime.  *Id.*  The court reasoned that even if "straight time" referred to an ordinary work week, it was not clear whether the employee would have ordinarily worked overtime.  *Id.*  The court concluded that "the arbitrator c[ould] easily clarify this issue, and then the court w[ould] know precisely what [it is] being asked to confirm and enforce."  *Id.* Therefore, the appellate court directed the district court to "remand the case to the arbitrator who made the original award for the limited purpose of providing clarification.  *Id.* at 970.

Here, the Union has pled facts sufficient to find that the arbitration award is ambiguous; and therefore, remand is not barred by the doctrine of *functio officio*. Neither the arbitration award nor the hearing record clarifies whether the award includes the disputed overtime. Merck and the Union interpret the "make whole" award differently, further supporting the Union's position that the award is ambiguous. Moreover, the arbitrator could easily clarify any ambiguity by explaining whether he intended for overtime to be included in the award. Therefore, dismissal is not appropriate based on the doctrine of *functio officio*.[1]

### E. Punitive or Compensatory Damages

Merck argues that if the arbitration award includes additional overtime hours Knight would have earned in the maintenance mechanic position, such an award would be impermissibly punitive. (Def.'s Br. 12-13.) The Union, on the other hand, argues that such an award would be compensatory. (Pl.'s Br. 10.)

Generally, "[i]f [] monetary damages are based upon 'cognizable loss causally traceable to [a] breach [of contract],' then such damages are compensatory." *McElroy Coal Co. v. United Mine Workers of Am.*, No. CIV.A. 5:07CV41, 2009 WL 367699, at *3 (N.D.W. Va. Feb. 10, 2009) (quoting *Norfolk & W. Ry. Co. v. Bhd. of Airline & S.S. Clerks*, 657 F.2d 596, 602 (4th Cir. 1981)). "Absent a loss caused by [a] breach [of contract], however, monetary damages are punitive." *Id.* (citing *Dist. 17, Dist. 29, Local Union 7113, and Local Union 6023, UMWA v. Allied Corp.*, 735 F.2d 121, 127 (4th Cir. 1984) ("an arbitrator's award is not sustainable where

---

[1] Merck argues that it has already complied with the arbitration award by compensating Knight "for the wage difference for all hours that he actually worked, adjusting his pensionable earnings, and making 401k contributions from and matching contributions on the backpay amount." (Def.'s Br. 11.) The Union argues that Merck has not complied with the award because it has not compensated Knight for lost overtime earnings. (Pl.'s Br. 6.) Whether Merck has complied with the award is tied-up in the question of whether the award is ambiguous. Because the Union has pled facts sufficient to find the arbitration award ambiguous, the court need not assess whether Merck has complied with the award at this stage of the litigation.

the damages awarded exceeded any monetary loss caused by breach of the collective bargaining agreement")).

Whether an award is compensatory or punitive, like other ambiguities, is a question that may be remanded to an arbitrator for clarification.  In *McElroy Coal Co.*, the court reviewed an arbitration award to determine whether the award was punitive or compensatory in nature.  2009 WL 367699, at *5.  The court concluded that "some aspects of the award suggest a punitive purpose, whereas others indicate a compensatory purpose."  *Id.*  "Because of these conflicting signals, th[e] Court f[ound] that the basis upon which the arbitrator made the award [wa]s ambiguous."  *Id.*  "Mindful of the extraordinary deference courts are to accord arbitration awards, th[e] Court conclude[d] that the proper remedy [wa]s to remand this action to the arbitrator for clarification of the basis of the award."  *Id.*

Here, the Union has pled facts sufficient to determine that, if Knight is awarded the contested overtime, such an award may be compensatory.  The nature of the arbitration award is a "make whole" award; one designed to compensate Knight for back pay and possibly overtime he would have earned had Merck initially hired him to the maintenance mechanic role.  This type of damages award, stemming from the monetary loss Knight experienced in not being hired to the maintenance mechanic position, is typically compensatory.  However, whether the disputed overtime is part of the arbitration award remains at issue in this case.  Should this court, or the arbitrator on remand, determine that the disputed overtime is part of the arbitration award and it is ambiguous as to whether the award is compensatory or punitive, this court may remand the case to the arbitrator to clarify whether the award is compensatory.

**F.  Attorney's Fees**

"A number of courts have recognized that Fed. R. Civ. P. 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety."  *Bocock v. Specialized Youth Servs. of Virginia, Inc.*, No. 5:14CV00050, 2015 WL 1611387, at *2 (W.D. Va. Apr. 10, 2015).  "[A]t least two other judges of this court have so held."  *Id.* (citing *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.,* 21 F.Supp.3d 620, 629, 631–32 (W.D. Va. 2014) (Urbanski, J.); *Debord v. Grasham,* 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014) (Jones, J.) (agreeing with *Charles* court "that a Rule 12(b)(6) motion is a premature means to attack a request for punitive damages, at least where such damages are theoretically recoverable under the applicable law")).

"As explained in *Charles*, Rule 12(b)(6) is a vehicle to dismiss a 'claim' in its entirety." *Id.* (citing 21 F. Supp. 3d at 629).  "Thus, a court should not dismiss a complaint so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to any relief the court can grant, even if that relief is not specifically requested."  *Id.*  "This principle is reinforced 'by Rule 54(c), which provides that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in his pleadings.'"  *Id.* (quoting *Charles*, 21 F.Supp.3d at 629 (quoting *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002))).

Here, Merck uses this 12(b)(6) motion to argue that the Union's claim for attorney's fees must be dismissed due to the general rule that a prevailing party may not recover attorney's fees in the absence of a statute or enforceable contract providing for a fee.  (Def.'s Br. 13-14.) However, since the court is not dismissing this claim in its entirety, the 12(b)(6) motion is not the appropriate vehicle to the claim for attorney's fees alone.  Therefore, the court will deny Merck's motion to dismiss as to the Union's request for attorney's fees.

III. CONCLUSION

For the above-stated reasons, the court will enter an order denying the defendant's motion to dismiss (Dkt. No. 26).

Entered: March 8, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge